This appeal is from a judgment entered in the Circuit Court of Montgomery County, Alabama. The trial court, pursuant to a jury verdict, ordered that the defendants, Clayton Shrout and others, pay the plaintiff, Dr. Bobby Thorsen, $40,000.00 compensatory damages and $3,000,000.00 punitive damages as a result of the defendants' attempt to defraud Thorsen in a loan-investment sham. We affirm.
The facts of this case are as follows:
Appellee, Dr. Bobby Thorsen, gave up the active practice of dentistry in the fall of 1981 to invest in warehouse and condominium development in Texas. Thorsen contacted Marian Brantley of Financial Advisors, Inc. (a Montgomery-based corporation), in order to secure a loan to finance the project. It was through this initial contact that Thorsen met Lee Wade, Mohamed Benmohamed, and ultimately Clayton Shrout, all of whom played an active role in the transaction.
Following two or three meetings between Thorsen, Brantley, and Wade at Wade's office in Atlanta, the three men went to Paris to meet with Benmohamed, who headed a group that was supposed to loan Thorsen $35 million. Subsequent to his return to the United States, Thorsen went back to Wade's office in Atlanta to work out the details of the loan. There were fifteen to twenty investors at this meeting other than Thorsen, as well as Clayton Shrout, the attorney who was to represent the individual investors. Thorsen was told by Shrout to wire $25,000.00 to Shrout's bank in Nebraska as "good faith money." Thorsen was then supposed to receive the loan. He sent the $25,000.00 as requested. A letter of commitment was sent by Shrout to Thorsen (by way of Marian Brantley) which evidenced the loan agreement between Thorsen and Grassbank Investments, the foreign corporation that was supposed to loan Thorsen the money. Furthermore, Thorsen paid Shrout $500.00 for representing him in the negotiations.
Some time after Thorsen had sent his $25,000.00 escrow deposit to Shrout, the two spoke by telephone, and Shrout assured Thorsen that the loan would be made. Shrout had several conversations with Brantley in which Shrout made similar assurances to Brantley. Thorsen again *Page 1224 
met with Shrout in Atlanta, at which time Shrout represented that the loan would soon be made.
In the weeks that followed, Thorsen made several unsuccessful attempts to reach Shrout by telephone to discern the reason for the delay. No loan was ever made to Thorsen, and his $25,000.00 good faith deposit was never returned.
There was evidence offered at trial that an almost identical sequence of events took place in 1982, involving two more Montgomery residents, Mr. and Mrs. James Walden. Also, in the case sub judice, another Alabama resident, Jack Carlson, was brought into the transaction by the defendants in an attempt to secure collateral for the loans. Carlson testified that he was ready to provide an annuity to secure the loans had there actually been any money to loan.
After discovering that this was all a sham and that there was no money, Thorsen filed suit in the Circuit Court of Montgomery County on November 22, 1982, alleging fraud, conspiracy, bad faith, breach of contract, and negligence against all defendants. Prior to trial, Financial Advisors, Inc., was dismissed from the action. The case was submitted to the jury on the fraud, conspiracy, and negligence counts. On December 9, 1983, the jury returned their verdict in favor of Thorsen and against Shrout and the other defendants. After all of his post-trial motions were denied, Shrout appealed to this Court.
The sole issue raised for our determination is whether the trial court was correct in holding that it had in personam
jurisdiction over Shrout. For the reasons that follow, we agree with the trial court that Shrout was subject to in personam
jurisdiction in Alabama. Therefore, the trial court's judgment is due to be affirmed.
Shrout asserts that the trial court committed reversible error by continuously denying his motions to dismiss the suit for lack of in personam jurisdiction over him. Shrout asserts that he was never present in Alabama, and that any contact he had with the state or any of its residents did not rise to the level of "sufficient minimum contacts" for jurisdictional purposes. We disagree. It has long been established that physical presence in the state is not a prerequisite to effective service of process on a non-resident defendant.Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278
(1940). What is required is that the out-of-state resident have "some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action." Rule 4.2 (a)(2)(I), A.R.Civ.P.
The Alabama Long Arm Statute (Rule 4.2) has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. See DeSotacho, Inc. v.Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977). In other words, "an Alabama court may acquire in personam jurisdiction over a non-resident defendant if the defendant has sufficient `minimum contacts' so that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Alabama Waterproofing Co. v. Hanby, 431 So.2d 141
(Ala. 1983), quoting International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This Court went further in Hanby to say:
 In determining whether the nonresident appellants possessed sufficient contacts with this state for the trial court to obtain in personam jurisdiction, we must necessarily examine all the relevant facts and attendant circumstances of the case. J. Moore, 2 Moore's Federal Practice § 4.41 — 1 [3] at 4-449.
431 So.2d at 145.
Therefore, in order to ascertain whether due process has been afforded to Shrout, we must consider the particular facts and circumstances of this case. After having done so, we are of the opinion that to require Shrout to defend an action in Alabama is in perfect accord with the due process requirements of the 14th amendment. *Page 1225 
Shrout played an integral part in the defendants' attempt to defraud Thorsen of thousands of dollars. Shrout participated in several telephone conversations with both Thorsen and Brantley in which he misrepresented that a loan would be made to Thorsen. He sent Thorsen a letter confirming the agreement. He took $25,000.00 of Thorsen's money as a good faith deposit, knowing that Thorsen would never receive the loan. Further, Shrout accepted $500.00 as a fee for representing Thorsen in these matters. Thorsen relied on Shrout's continued assurances that he would receive the loan, and at all times thought that Shrout was representing his best interests in the deal.
The above-described acts are not those of an innocent person who has been dragged into an Alabama court unfairly. Shrout knew or should have known what the consequences of his actions would be, and must certainly have expected that a suit would be filed against him in Alabama. It is reasonable to assume that Shrout, anticipating that Thorsen would file suit in Alabama, attempted to keep his contacts with the state minimal, in order that later he could assert his lack of contacts as a bar to the court's acquiring inpersonam jurisdiction over him. We cannot allow a culpable defendant to manipulate our decisions on inpersonam due process to effect a shield against his improper conduct.
In Alabama Waterproofing Co. v. Hanby, supra, we discussed the issue of the foreseeability of being sued in a particular state, saying:
 [T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See Kulko v. California Superior Court, supra, 436 U.S., at 97-98, 98 S.Ct. at 1699-1700; Shaffer v. Heitner, 433 U.S., at 216, 97 S.Ct., at 2586, and see id., at 217-219, 97 S.Ct., at 2586-87
(Stevens, J., concurring in judgment). The Due Process Clause, by ensuring the "orderly administration of the laws," International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct., at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
431 So.2d at 146; quoting World-Wide Volkswagen Corp.v. Woodson, 444 U.S. 286, 290, 297, 100 S.Ct. 559, 567,62 L.Ed.2d 490 (1980). More recently, the United States Supreme Court addressed this same issue in Calder v.Jones, ___ U.S. ___, 104 S.Ct. 1482, 79 L.Ed.2d 804
(1984), wherein it stated:
 [The] petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. World-Wide Volkswagen Corp. v. Woodson, 444 U.S., at 297, 100 S.Ct., at 567; Kulko v. Superior Court, 436 U.S. 84, 97-98, 98 S.Ct. 1690, 1699-1700, 56 L.Ed.2d 132
(1978); Shaffer v. Heitner, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.
___ U.S. ___, 104 S.Ct. at 1487.
Based on the Supreme Court's holding in Calder v. Jones, Thorsen must not be forced to travel to Nebraska or some other state to try and recover from Shrout.
Alabama has an interest in providing an effective means of recovery for a resident who has been damaged, especially *Page 1226 
in a situation like the one before us. In this regard, we note that Thorsen's prima facie showing of a conspiracy to defraud, through his testimony as well as that of other Alabama residents involved in the same or similar transactions, further strengthens the finding of in personam jurisdiction by the trial court. To disallow service of process in cases like this would give persons so inclined a license to put these shams together. There was evidence produced at trial that, on at least two separate occasions, Alabama residents were defrauded by these same defendants. What happened to Thorsen in this case was the result of a scheme devised by the defendants, including Clayton Shrout, to take Thorsen's money. It cannot succeed.
The trial court's decision recognizing in personam
jurisdiction over Shrout is in accord with United States Supreme Court cases, and in no way infringes upon the notions of fair play and substantial justice. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER and EMBRY, JJ., concur.
TORBERT, C.J., and ALMON, J., concur specially.