448

614 A.2d 722

Kirit K. JOSHI,

v.

Mohan NAIR, Appellant.

Superior Court of Pennsylvania.

Argued April 8, 1992.

Filed Sept. 10, 1992.

450

George Baillie, Burgettstown, for appellant.

Cary D. Jones, Washington, for appellee.

Before CAVANAUGH, DEL SOLE and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the order denying appellant's petition to strike a foreign judgment that was transferred to and duly entered in Pennsylvania.

Appellant presents the following issues for our review: (1) whether Alabama properly exercised *in personam* jurisdiction over appellant; (2) whether the *ex parte* amendment of the judgment without notice to appellant violated appellant's right to due process; (3) whether enforcement of the judgment against appellant is fundamentally unfair; and (4) whether the foreign judgment is entitled to full faith and credit in the Pennsylvania courts.[1] For the reasons set forth below, we affirm. Before discussing these issues, we will briefly recount the relevant facts of this case. Appellant, Mohan Nair[2] was an employee of M–R Labs, Research & Development, Inc. (M–R Labs).[3] Appellant contacted appellee, Kirit

---

1. We observe that the fourth issue raised by appellant is not specifically included in his statement of questions in violation of Pa.R.A.P., Rule 2116(a), 42 Pa.C.S.A. (providing that ordinarily no point will be considered which is not set forth in the statement of questions involved and that the requirements of the rule are mandatory). However, appellant's brief contains argument on this specific issue. Moreover, appellant's fourth claim is inextricably related to his first and second questions. Because our ability to effectively review this claim has not been compromised by appellant's failure to include it in his statement of questions, we will disregard this defect and proceed to evaluate its merits. *See* Pa.R.A.P., Rule 105(a), 42 Pa.C.S.A. (permitting this court to disregard the requirements of the rules in the interests of justice).

2. Appellant is currently a Pennsylvania resident.

3. M–R Labs was incorporated as a New Jersey Corporation. *See* Motion for Rule to Show Cause why Judgment Should not be Stricken, filed May 28, 1991, Exhibit E (Certificate of Incorporation). The

Joshi,[4] seeking to interest him in the purchase of investment securities in M–R Labs. In response to the information supplied by appellant, appellee agreed to invest in the corporation. Appellant subsequently traveled to Alabama to meet with appellee and to accept appellee's investment of $10,-000.00.[5]

After relinquishing his funds to appellant, appellee entertained doubts as to the wisdom of his investment and asked appellant for a guarantee of the debt. To appease appellee, a promissory note signed by Frank Ramesh, in his capacity as president of M–R Labs, was sent to appellee. The note, which was executed on January 17, 1989, promised to repay appellee the sum of $10,000.00 with an interest rate of twelve percent (12%) per annum. *See* Motion for Rule to Show Cause why Judgment Should not be Stricken, Exhibit B (copy of promissory note). The note was not due until January 15, 1992. *See id.* Appellee was dissatisfied with the form of the promissory note and requested that appellant execute a new note as well as a personal guarantee by appellant and his partners. In addition, appellee asked appellant to supply him with the names and addresses of other individuals who had invested in the corporation. Appellee also advised appellant that the investment would be withdrawn if appellant did not send the requested documentation. Although appellant promised to send his personal guarantee to appellee, appellee never received anything further from appellant and accordingly de-

certificate identifies Frank Ramesh and Michael Nair as directors of the corporation. *See id.* Neither the certificate of incorporation nor other documentation in the record discloses whether there is a relationship between appellant and Michael Nair or whether they are in fact the same individual. Aside from this certificate, other proof that the corporation actually existed is lacking. *See* Reply to Motion for Rule to Show Cause why Judgment Should not be Stricken, at section IIC paragraph 35A and section IIIC paragraph 48 (describing appellee's efforts in attempting to locate the corporation and inability to obtain proof that the corporation existed).

4. Appellee is a resident of Alabama.

5. Appellee allegedly paid appellant by a check that was made payable to M–R Labs. *Nair v. Joshi,* 578 So.2d 1296, 1297 (Ala.1991). The certified record does not indicate the disposition of these funds other than that they were given to appellant.

manded a return of his funds. Neither appellant nor the corporation ever refunded appellee's money.

In an attempt to recoup his investment, appellee tried to contact the corporation, Frank Ramesh and appellant at the address and telephone number identified on the corporate letterhead which appellant had utilized in his communications with appellee. Appellee was not successful as telephone service had been disconnected and he was unable to obtain a forwarding address. Appellee then contacted the appropriate New Jersey authorities who advised him that M–R Labs was not in operation. *See* Reply to Motion for Rule to Show Cause Why Judgment Should not be Stricken, at section IIC paragraph 35A. Appellee subsequently discovered that appellant had moved to Pennsylvania and traced appellant to his Pennsylvania address. Appellee then contacted appellant, who again agreed to return appellee's funds. Appellant did not perform as promised.

On March 2, 1990 appellee instituted suit in Alabama against M–R Labs, Frank Ramesh and appellant.[6] Because neither M–R Labs nor Frank Ramesh could be located, service could not be made on either of these defendants. However, appellant was served with and personally accepted a copy of the complaint. *See Nair v. Joshi,* 578 So.2d 1296, 1298 (Ala.1991). Appellant elected not to appear and defend the Alabama litigation, allegedly due to the receipt of improper legal advice from Pennsylvania counsel. *See id.* Because a response to the complaint was not filed within the requisite time period specified by the Alabama procedural rules, appellee obtained a default judgment against all of the defendants. *See* Alabama Rules of Civil Procedure (Ala. R.C.P.), Rule 12(a), Code of Alabama 1975 (requiring an answer to be filed within thirty days after service of the complaint); Ala. R.C.P., Rules 55(a) and (b), Code of Alabama 1975 (discussing the method of obtaining a default judgment). Judgment was then

**6.** Appellee's complaint contained multiple counts, the essence of which seemed to be premised upon fraudulent or intentional misrepresentation of the sale of securities. *See Nair v. Joshi,* 578 So.2d at 1297. Appellee also requested both compensatory and punitive damages in the complaint. *Id.*

formally entered by the Alabama lower court on May 18, 1990. *See* Ala. R.C.P., Rules 55 and 58, Code of Alabama 1975.

In entering judgment, the Alabama trial court did not address appellee's claim for punitive damages even though such damages had been specifically requested by appellee in his complaint. Consequently, appellee filed a timely petition to amend the judgment as authorized by Ala. R.C.P., Rule 59(e), Code of Alabama 1975. Due to the lack of service on M–R Labs and Frank Ramesh, appellee also requested that the judgment be set aside as to these defendants. The Alabama trial court granted appellee's motion and awarded appellee $75,000.00 in punitive damages in addition to compensatory damages of $10,000, plus interest in the sum of $1,600.00, costs and attorneys' fees in the amount of $2,000.00. The award was then entered as a final judgment in the sum of $88,600.00 on May 30, 1990. *See* Ala. R.C.P., Rule 58, Code of Alabama 1975.

Appellee duly transferred to and entered the judgment in Washington County, Pennsylvania, pursuant to the requirements of the Uniform Enforcement of Foreign Judgments Act (UEFJA), *codified at* 42 Pa.C.S.A. § 4306. *See* Praecipe for Entry of Judgment, filed August 14, 1990. Appellant was notified of the entry of the judgment in Pennsylvania. In response to the entry of judgment, appellant filed a timely motion in Alabama to have the judgment set aside. *See* Ala. R.C.P., Rule 60(b), Code of Alabama 1975 (indicating the grounds upon which a judgment can be set aside and the time limitations within which such motion can be filed). The Alabama trial court denied appellant's motion on the basis that appellant had not satisfied the requisites set forth in subsection (b)(1) of the rule.[7] This ruling was ultimately affirmed by

---

7. The Alabama rule clearly permits a void judgment to be set aside. Ala.R.C.P., Rule 60(b)(4), Code of Alabama 1975. Lack of jurisdiction over the parties is recognized by the Alabama Courts as a basis for granting a party relief under Rule 60(b)(4). *Ex parte Personnel Board of Jefferson County*, 513 So.2d 1029, 1031 (Ala.Civ.App.1987). Curiously, appellant did not seek to have the judgment set aside on this ground, but opposed the judgment under Ala.R.C.P., Rule 60(b)(1), Code of Alabama 1975, which permits a judgment to be set aside as a result of a party's mistake, inadvertence, surprise or excusable neglect. *See* Ala.

the Alabama Supreme Court. *See Nair v. Joshi,* 578 So.2d at 1298.

After his lack of success in Alabama, appellant sought to attack the transferred judgment by filing a motion to strike on May 28, 1991. The trial court denied appellant's request on August 5, 1991. This timely appeal followed.

As a preliminary matter, we observe that appellant has failed to include in his brief a statement of jurisdiction and a table of citations in contravention of Pa. R.A.P., Rules 2111(a) and 2114, 42 Pa.C.S.A. (requiring a statement of jurisdiction in an appellant's brief) and Pa. R.A.P., Rule 2174(b), 42 Pa.C.S.A. (mandating the inclusion of a table of citations in all briefs). Appellant's failure to include a table of citations is a relatively minor deficiency which does not substantially impinge upon our ability to engage in effective and meaningful appellate review. We may therefore disregard this irregularity. *See* Pa. R.A.P., Rule 105(a), 42 Pa.C.S.A. However, the lack of a jurisdictional statement poses a more serious problem, since we cannot entertain this appeal if jurisdiction is found to be lacking. Although not discussed by either of the parties, we must ascertain whether we may exercise jurisdiction over this appeal. *See Motheral v. Burkhart,* 400 Pa.Super. 408, 414, 583 A.2d 1180, 1184 (1990) (*en banc*) (providing that because the question of appealability concerns the jurisdiction of the appellate court, we may raise such an issue *sua sponte* even where the parties have not done so).

In reviewing the certified record, it appears that this is an appeal from an order refusing to vacate or strike off a judgment. Such orders are appealable as of right pursuant to Pa. R.A.P., Rule 311(a)(1), 42 Pa.C.S.A. *See also* 42 Pa.C.S.A. § 702(a) and § 5105(c) (authorizing appeals from certain classes of interlocutory orders as specified by law). Jurisdiction over this appeal is thus vested in this court and we will proceed to review the merits of appellant's claims.

R.C.P., Rule 60(b)(1), Code of Alabama 1975 and *Nair v. Joshi,* 578 So.2d at 1297–1298 (discussing appellant's arguments for setting aside the judgment under Rule 60(b)(1)).

■ In evaluating the trial court's refusal to strike, or more properly, vacate [8] the judgment, our scope of review is limited to ascertaining whether the trial court manifestly abused its discretion or committed an error of law. *Tandy Computer Leasing v. DeMarco*, 388 Pa.Super. 128, 132, 564 A.2d 1299, 1301 (1989). We will scrutinize the trial court's decision and appellant's arguments in accordance with this standard.

Before addressing the issues posed by appellant, it is necessary to consider the context in which they arise and the relevant principles relating thereto. *Tandy Computer Leasing v. DeMarco, supra.* The judgment at issue in this case was transferred to Pennsylvania and entered as a judgment here pursuant to the UEFJA. As recognized by this court, the UEFJA "is grounded in the constitutional obligation of each state to give full faith and credit to the judgments of other states. [*See*] U.S. Const[itution], art. IV, § 1[] ..." *Tandy Computer Leasing v. DeMarco, supra* (footnote, which recites the text of the Full Faith and Credit Clause of the United States Constitution, has been omitted). "The provisions of the [UEFJA] have been interpreted to mean that any foreign judgment properly filed in Pennsylvania must be accorded full faith and credit unless there is a particular overriding reason that requires us to deny full faith and credit to the judgment." *First Fidelity Bank v. Standard Machine & Equipment Co.*, 398 Pa.Super. 607, 611, 581 A.2d 629, 631 (1990), *allocatur denied*, 527 Pa. 593, 588 A.2d 914 (1991), *citing Tandy Computer Leasing v. DeMarco*, 388 Pa.Super. at 133, 564 A.2d at 1301–1302. *Accord Greate Bay Hotel & Casino, Inc. v. Saltzman*, 415 Pa.Super. 408, 413–415, 609 A.2d 817, 819 (1992). Further,

[a] lack of personal jurisdiction on the part of the court which originally awarded the judgment or a lack of due

8. The Uniform Enforcement of Foreign Judgments Act only refers to vacating, opening or staying a foreign judgment. *See* 42 Pa.C.S.A. § 4306(b). As noted by this court, it does not refer to the striking of such a judgment. *See Tandy Computer Leasing v. DeMarco*, 388 Pa.Super. 128, 144–145, 564 A.2d 1299, 1308 (1989). If the trial court found that Alabama lacked jurisdiction over appellant, the proper remedy therefore would have been to vacate rather than strike the judgment. *Id.*

process on the part of that court are reasons why the principle of full faith and credit would be denied and the subsequent Pennsylvania judgment stricken. On the other hand, such a transferred judgment cannot be stricken or opened simply because the party seeking to open or strike can demonstrate that he/she would have a valid defense to the action if brought in Pennsylvania. [Rather,] [o]nly those defenses, like a lack of personal jurisdiction by the rendering court, which destroy the full faith and credit obligation may form the ground for refusing that judgment full faith and credit.

*Tandy Computer Leasing v. DeMarco*, 388 Pa.Super. at 133, 564 A.2d at 1302 (citations omitted). Thus, "the party challenging the foreign judgment may not attack the transferred judgment by raising any and all defenses [thereto, as it] is entitled to full faith and credit in the transferee state even though the underlying claim would not be enforced in that forum...." *First Fidelity Bank v. Standard Machine & Equipment Co.*, 398 Pa.Super. at 611, 581 A.2d at 631, *citing Tandy Computer Leasing v. DeMarco, supra. Accord Greate Bay Hotel & Casino, Inc. v. Saltzman*, 415 Pa.Super. at 414, 609 A.2d at 820. Mindful of these considerations, we direct our attention to appellant's claims.

Appellant first contends that the judgment is not entitled to full faith and credit because Alabama could not properly exercise personal jurisdiction over appellant.[9] In

9. Appellee suggests that appellant has waived or should be precluded from litigating his jurisdictional claim in this state. Appellant responds to this argument by asserting that lack of personal jurisdiction is a nonwaivable defense. Appellant's Brief at 9. Appellant is in error, as the defense of lack of personal jurisdiction is a waivable right in both Pennsylvania and Alabama. *See, e.g.*, Pa.R.C.P., Rule 1032(1), 42 Pa.C.S.A. (providing that a party waives all defenses and objections which he or she does not present by preliminary objection, answer or reply) and Ala.R.C.P.Rule 12(h), Code of Alabama 1975 (stating that the defense of lack of personal jurisdiction is waived if omitted or not raised in an appropriate motion or responsive pleading).

In this case, appellant had the opportunity to raise his jurisdictional claim in Alabama when he instituted the action in Alabama to have the judgment set aside. As noted above, Alabama expressly permits a void judgment to be set aside. Ala.R.C.P., Rule 60(b)(4), Code of Alabama, Title 23 (1975). Further, lack of jurisdiction would entitle a party to

addressing this issue, we must necessarily look to the law of the state which rendered the judgment, which in this case is Alabama.[10] *See First Fidelity Bank v. Standard Machine & Equipment Co.,* 398 Pa.Super. at 612, 581 A.2d at 631 (examining New Jersey law), *citing Tandy Computer Leasing v. DeMarco,* 388 Pa.Super. at 138, 564 A.2d at 1303 (reviewing Texas law). Rule 4.2 of the Alabama Rules of Civil Procedure sets forth Alabama's entire basis for exercising personal jurisdiction over a non-resident defendant. *See* Ala. R.C.P., Rule 4.2 and Rule 4.4, Committee Comments to Rule 4.2, Code of Alabama 1975; *Murray v. Alfab, Inc.,* 601 So.2d 878, 883–84 (Ala.1992); *Keelean v. Central Bank of the South,* 544 So.2d 153, 156 (Ala.1989). This rule permits out-of-state service of process to be made upon a non-resident person when the person has sufficient contacts with Alabama so that prosecution of the action against the person is not inconsistent with either the Alabama Constitution or the Constitution of the United States. Ala. R.C.P., Rule 4.2(a)(1)(A) and (a)(1)(B), Code of Alabama 1975. Subsection (2) of the rule further defines sufficient contacts in the following terms:

(2) **Sufficient Contacts.** A person has sufficient contacts with this state when that person, acting directly or by agent,

have the judgment set aside pursuant to Rule 60(b)(4). *Ex parte Personnel Board of Jefferson County,* 513 So.2d at 1030. However, appellant did not challenge the judgment on jurisdictional grounds but sought to have the judgment set aside on the basis of mistake, inadvertence or excusable neglect. *See Nair v. Joshi,* 578 So.2d at 1297. Because appellant had the opportunity to fully litigate his jurisdictional challenge in Alabama and elected not to do so, it appears that litigation of the jurisdictional issue should be precluded pursuant to the doctrine of *res judicata. See Noetzel v. Glasgow, Inc.,* 338 Pa.Super. 458, 467, 487 A.2d 1372, 1373 (1985), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986) (in which we observed that *res judicata* bars the relitigation of issues previously raised as well as arguments which might have been raised). The interests of justice nevertheless require us to review the jurisdictional issue, as the Alabama judgment should not be accorded full faith and credit if Alabama indeed lacked jurisdiction over appellant.

10. Although appellant does cite a few Alabama cases for broad principles which generally relate to the concept of jurisdiction, the parties inexplicably have failed to discuss or otherwise reference Alabama's long-arm provision and the relevant authorities which interpret it.

is or may be legally responsible as a consequence of that person's:

(A) Transacting any business in this state;

(B) Contracting to supply services or goods in this state;

(C) Causing tortious injury or damage in this state by an act or omission in this state. . . .

(D) Causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;

(E) Causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such other person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(F) Having an interest in, using, or possessing real property in this state;

(G) Contracting to insure any person, property or risk located within this state at the time of contracting;

(H) Living in the marital relationship within this state, notwithstanding subsequent departure from this state, as to all obligation arising from alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state; or

(I) Otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)–(H) of this subsection (2), so long as the prosecution of the action against a person in this

state is not inconsistent with the Constitution of this state or the Constitution of the United States.

Ala. R.C.P., Rule 4.2(a)(2)(A)–(I), Code of Alabama 1975.[11]

As made clear by both the commentary to the rule and the decisions interpreting it, the Alabama long-arm statute extends the jurisdiction of the Alabama courts to the permissible limits of the current interpretation of federal due process. *See* Ala. R.C.P., Committee Comments following Rule 4.4, Code of Alabama 1975; *Murray v. Alfab, Inc.,* 601 So.2d at 884; *Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d 459, 461 (Ala.1986); *Shrout v. Thorsen,* 470 So.2d 1222, 1224 (Ala.1985). Accordingly, the Alabama Courts have followed and relied upon the holdings of United States Supreme Court decisions in determining whether Alabama can properly exercise jurisdiction over non-resident defendants. *See, e.g., Murray v. Alfab, Inc.,* 601 So.2d at 884; *Clemons v. Gearbulk, Ltd.,* 581 So.2d 462, 465 (Ala.1991); *Keelean v. Central Bank of the South,* 544 So.2d at 156–158; *Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d at 461–462; *Shrout v. Thorsen,* 470 So.2d at 1225 (all of which discuss and apply the jurisdictional principles enunciated by the United States Supreme Court).

■ The Alabama Supreme court has recognized that:

" '[d]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, [that] he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *McGee v. International Life Ins.*

11. Subdivisions (2)(F), (2)(G) and (2)(H) are clearly inapplicable and will not be further discussed. With respect to subdivisions (2)(D) and (2)(E), it is questionable whether jurisdiction may be exercised pursuant to these grounds, as there is nothing in the certified record which would indicate that appellant either regularly conducted or solicited business in Alabama or derived substantial revenues from goods used in Alabama. However, appellant's conduct in contacting appellee might arguably be deemed a persistent course of conduct so as to permit the assertion of jurisdiction under either of these provisions. We need not specifically determine whether jurisdiction under either of these subdivisions is proper, since we find that one or more of the remaining subdivisions clearly provide an adequate basis for Alabama's exercise of jurisdiction.

*Co.,* 355 U.S. 220, [222,] 78 S.Ct. 199, [201,] 2 L.Ed.2d 223[, 225–226] (1957), quoting *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95[, 102] (1945).

*Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d at 461. *Accord Clemons v. Gearbulk, Inc.,* 581 So.2d at 465; *Shrout v. Thorsen,* 470 So.2d at 1224; *Cagle v. Lawson,* 445 So.2d 564, 566 (Ala.1984). To determine whether a defendant's contacts are sufficient, the Alabama courts have examined the relevant facts of each case. *Clemons v. Gearbulk, Inc.,* 581 So.2d at 464; *Shrout v. Thorsen,* 470 So.2d at 1224. In conducting this analysis, Alabama has primarily focused on the requisite of foreseeability or "fair warning" to the defendant, *i.e.,* whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *See Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d at 462; *Clemons v. Gearbulk, Inc.,* 581 So.2d at 464–465, *quoting Duke v. Young,* 496 So.2d 37, 39 (Ala.1986) and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980); *Keelean v. Central Bank of the South,* 544 So.2d at 156–157; *Shrout v. Thorsen,* 470 So.2d at 1225; *Cagle v. Lawson,* 445 So.2d at 566. Where the plaintiff's cause of action is directly related to or arises out of the defendant's contacts with the forum, as in the case *sub judice,* the foreseeability/fair warning requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 79 L.Ed.2d 790[, 797], 104 S.Ct. 1473[,] 1478 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.] *Helicopteros Nacionales de Colombia, S.A., v. Hall,* 466 U.S. 408, 414, 80 L.Ed.2d 404, [411,] 104 S.Ct. 1868[,] 1872 [ (1984) ]." *Keelean v. Central Bank of the South,* 544 So.2d at 158, *quoting Burger King v. Rudzewicz,* 471 U.S. 462, 472–473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 540–541 (1985). *See also Murray v. Alfab, Inc.,* 601 So.2d at 884 (providing that where a defendant's contacts are not sufficient to sustain the exercise of general jurisdiction, specific jurisdiction over the defendant

can be obtained if the defendant has sufficient contacts with the forum state in relation to the cause of action). The Alabama Supreme Court has further observed that jurisdiction cannot be based upon the unilateral activities of the plaintiff. *Murray v. Alfab, Inc.*, 601 So.2d at 884–85; *Dillon Equities v. Palmer & Cay, Inc.*, 501 So.2d at 462, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. at 474–475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542 and *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298 (1958). Rather, " 'it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Murray v. Alfab, Inc.*, 601 So.2d at 884, *quoting Hanson v. Denckla, supra*. Accord *Dillon Equities v. Palmer & Cay, Inc., supra*.

Evaluation of appellant's contacts in accordance with the above considerations persuades us that Alabama properly asserted personal jurisdiction over appellant. Appellant deliberately contacted appellee, an Alabama resident, for the purpose of selling him investment securities in M–R Labs. *Nair v. Joshi*, 578 So.2d at 1296. Further, appellant personally travelled to Alabama to obtain appellee's funds. *Id.*, 578 So.2d at 1297. Appellant also made numerous representations to appellee which concerned the expected return on appellee's investment, the fact that appellant and his partner would supply personal guarantees to appellee, and that the investment would be returned. *Id.*, 578 So.2d at 1296–1297. Appellant's conduct supports a finding that he purposefully availed himself of the privilege of conducting activities within Alabama, thus invoking the benefit and protection of Alabama's laws. *See Murray v. Alfab, Inc.* and *Dillon Equities v. Palmer & Cay, Inc., supra*. Moreover, appellant specifically directed his business activities at an Alabama resident, and therefore, he ought to have reasonably anticipated being haled into Alabama's courts to defend against his misconduct when appellee discovered the fraudulent nature of appellant's misrepresentations and the fact that appellant had absconded

with the invested funds. Appellee's cause of action also arose out of or was directly related to appellant's specific contacts with Alabama. Under these circumstances, appellant had sufficient minimum contacts with Alabama to support the exercise of specific personal jurisdiction over appellant. *See Murray v. Alfab, Inc.; Dillon Equities v. Palmer & Cay, Inc.; Clemons v. Gearbulk, Inc.; Keelean v. Central Bank of the South; Shrout v. Thorsen; Cagle v. Lawson, supra.*

Having reached this conclusion, we must next ascertain whether Alabama's assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Dillon Equities v. Palmer & Cay, Inc.; Clemons v. Gearbulk, Inc.; Shrout v. Thorsen; Cagle v. Lawson, supra.* In determining whether this requirement has been met, the Alabama courts consider the same factors associated with the doctrine of forum *non conveniens. Cagle v. Lawson,* 445 So.2d at 565; Ala.R.C.P., Rule 4.4, Committee Comments to Rule 4.2, Code of Alabama 1975. These factors include "the convenience of the parties and witnesses, and the interests of justice." *Keelean v. Central Bank of the South,* 544 So.2d at 158, *quoting* Code of Alabama 1975, § 6–5–430. *See also Dillon Equities v. Palmer & Cay, Inc.,* 501 So.2d at 462 (discussing the defendant's inconvenience in litigating in Alabama); *Shrout v. Thorsen,* 470 So.2d at 1225–1226 (discussing Alabama's interest in providing an effective means of recovery for its residents who have been damaged by a defendant's fraudulent loan scheme where the defendant deliberately minimized his contacts with Alabama to avoid Alabama's exercise of personal jurisdiction); *Cagle v. Lawson,* 445 So.2d at 556 (also discussing inconvenience to the defendant). "We must also keep in mind that when a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *First Fidelity Bank v. Standard Machine & Equipment Co.,* 398 Pa.Super. at 615, 581 A.2d at 633, *quoting Burger King v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 544.

Appellant has not established a compelling case that these additional considerations would render Alabama's exercise of jurisdiction unreasonable in this case. Appellant does not contend or otherwise demonstrate that litigation in Alabama would have been unduly burdensome. More importantly, Alabama has a strong interest in providing an effective means of recovery for its citizens who are defrauded by non-residents. *See Shrout v. Thorsen, supra.* It is also unfair to permit appellant to avoid the consequences of his improper conduct, and Alabama undoubtedly would not permit appellant to use the due process clause as a shield to escape the obligations which he voluntarily created. *Id.* We therefore conclude that Alabama's assertion of personal jurisdiction over appellant comported with the fundamental requisites of due process and that maintenance of the suit in Alabama would not have offended traditional notions of fair play and substantial justice.

■ In his second issue, appellant claims that the Alabama judgment should not be given full faith and credit by Pennsylvania because the judgment was obtained through the violation of appellant's due process right to notice. Appellant admitted in the Alabama litigation that he actually received a copy of appellee's complaint. *Nair v. Joshi,* 578 So.2d at 1298. Appellant also indicates that he received notice that a default judgment had been entered. Appellant's Brief at 10. Appellant thus does not contest the notice of either of these events. Rather, appellant complains of the fact that he was not notified of appellee's motions to amend the judgment to include punitive damages and to have the judgment against Frank Ramesh and M–R Labs set aside. *Id.* For support, appellant relies, in part, upon Pennsylvania's notice provisions.[12] As explained by this court,

> [t]he [rendering state's] proceedings are not governed by Pennsylvania's procedural rules. Pa.R.C.P., Rule 237.1, [42

12. Appellant refers us to Pa.R.C.P., Rule 1037, 42 Pa.C.S.A. While this provision governs the entry of default judgments, the specific rule regarding the notice of a party's intent to enter a default judgment is found at Rule 237.1(a) of our rules of civil procedure.

Pa.C.S.A.,] upon which appell[ant] appears to rely and which requires notice before the entry of a default judgment, does not have an extra-territorial effect. It does not have [an] effect on [the rendering state's] actions and cannot be used to measure the validity of [default] judgments obtained in [the transferor state]. So long as [the transferor state's] procedure complies with fundamental concepts of due process, its judgments are entitled to full faith and credit.

*Greate Bay Hotel & Casino, Inc. v. Saltzman, supra,* 415 Pa.Super. at 413, 609 A.2d at 819. Because Pennsylvania's notice provisions governing entry of default judgments are inapplicable to Alabama proceedings, we must examine Alabama's procedural rule.

The Alabama Rules of Civil Procedure define when service is and is not required. Rule 5 specifically states:

(a) *Service: When required.* Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal and similar paper shall be served upon each of the parties. *No service need be made on parties in default for failure to appear* except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

Ala.R.C.P., Rule 5(a), Code of Alabama 1975 (emphasis added). As made clear by the Committee Comment, "Rule 5(a) thus requires all papers to be served on all parties to the action with the following exceptions: ... (1) orders and judgments not required by their terms to be served; (2) ex parte motions; [and] (3) any pleadings, motions, notices or other papers when the opposing party is in default for failure to appear, and no new or additional claim for relief is asserted...." *Id.,* Committee Comment.

As applied here, appellant was served with the original complaint. Once appellant defaulted by failing to enter an appearance and file a response to the complaint, no further service was mandated, unless appellee asserted a new or additional claim for relief. In this case, appellee did not assert a new or additional claim for relief because appellee had previously requested punitive damages in his complaint. Thus, appellant was not entitled to additional notice of appellee's motion to amend the judgment.

Our inquiry is not at an end as we must nevertheless consider whether Alabama's rule violates appellant's due process right to notice. In resolving this question, we observe that this court was presented with a virtually indistinguishable issue in *Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 487 A.2d 1372 (1985), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 915 (1986). In *Noetzel v. Glasgow, Inc.*, we reviewed a similar due process challenge to West Virginia's Rule 5(a), which is identical to Alabama's Rule 5(a). In rejecting the defendant's due process claim, we stated:

> We are not called upon to review the wisdom of procedural rules which permit such a result.[ ] We must determine only whether the procedure established by rule in West Virginia violated rudimentary principles of due process. Notice, the most basic requirement of due process, must "be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections. The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice." ... The ... service ... in this case ... was in fact reasonably calculated to inform Glasgow of the action and was adequate to satisfy due process requirements. Moreover, the notice in this case was received in fact by Glasgow's representatives. The failure to act in pursuance thereof was attributable either to inadvertence or carelessness. *Due process did not require that Glasgow receive repeated notices thereafter. When Glasgow failed to appear in response to initial service, due process did not require that it again be invited*

*to participate in the proceedings. Appellees were not required to obtain Glasgow's permission to proceed further. Due process did not require notice of appellee's intent to take a default judgment or of their intent to take procedural steps to reduce their judgment to a monetary amount. When Glasgow failed to evidence an interest in defending the action following service of initial process, due process did not require that appellees invite them to join the proceedings thereafter.*

*Noetzel v. Glasgow, Inc.*, 338 Pa.Super. at 469–470, 487 A.2d at 1377–1378 (footnote omitted) (emphasis added).

As stated above, appellant admittedly received actual notice of the original complaint. Due to his own actions or the alleged misadvice of Pennsylvania counsel, appellant failed to respond thereto. In view of appellant's demonstrated refusal to participate in the proceedings, due process did not obligate appellee to obtain appellant's permission before taking further action. Due process likewise did not require appellee to notify appellant of further proceedings after appellant defaulted by his willful failure to appear and defend. Consequently, appellant's due process rights were not violated.

Appellant's third claim suggests that the judgment is not entitled to full faith and credit because it violates principles of fundamental fairness. More specifically, appellant asserts that the judgment should not be enforced because:

1. The Note is a Corporate, not Personal Debt.
2. The Note is Not Due.
3. MR LABS Exists.

Appellant's Brief at 11–12. The essence of appellant's claim appears to be that it is fundamentally unfair to enforce a judgment against him where appellee's underlying cause of action was based on a promissory note issued by the corporation which appellant did not sign or otherwise personally guarantee. We disagree.

First, appellee's underlying cause of action was not solely based upon the promissory note. Rather, appellee's underlying action was premised upon appellant's own violation of

Alabama's securities laws and intentional and outrageous misrepresentations regarding the status of M–R Labs and the expected return on appellee's investment. *See Nair v. Joshi,* 578 So.2d at 1297 and 1298. Because appellee's cause of action was premised upon appellant's intentional misconduct, it is not fundamentally unfair to enforce the Alabama judgment.

More importantly, we observe that the reasons offered by appellant constitute defenses to appellee's underlying cause of action. As indicated above, only those defenses, such as a lack of subject matter jurisdiction, a lack of jurisdiction over the parties, a violation of appellant's due process rights, or a lack of a meaningful opportunity to appear and defend, can be considered as a basis for denying a foreign judgment full faith and credit. *See Greate Bay Hotel & Casino, Inc. v. Saltzman,* 415 Pa.Super. at 413, 609 A.2d at 819 and *Tandy Computer Leasing v. DeMarco, supra.* Thus, "the party challenging the foreign judgment may not attack the transferred judgment by raising any and all defenses [thereto, as it] is entitled to full faith and credit in the transferee state even though the underlying claim would not be enforced in that forum...." *First Fidelity Bank v. Standard Machine & Equipment Co.,* citing *Tandy Computer Leasing v. DeMarco, supra.* Further, "a transferred judgment cannot be stricken or opened simply because the party seeking to open or strike can demonstrate that he/she would have a valid defense to the action if brought in Pennsylvania." *Greate Bay Hotel & Casino, Inc. v. Saltzman, supra,* 415 Pa.Super. at 414, 609 A.2d at 820, *quoting Tandy Computer Leasing v. DeMarco, supra.* If appellant believed that he had meritorious defenses to appellee's complaint, appellant's sole remedy was to assert them in the Alabama action. *Greate Bay Hotel & Casino, Inc. v. Saltzman, supra,* 415 Pa.Super. at 413, 609 A.2d at 819. Appellant chose not to do so and any valid defenses which he may have had with respect to the underlying cause of action cannot now be utilized to deny full faith and credit to the Alabama judgment. *See Greate Bay Hotel & Casino, Inc. v. Saltzman;*

*First Fidelity Bank v. Standard Machine & Equipment Co.; Tandy Computer Leasing v. DeMarco, supra.*

Appellant's fourth issue asserts that the judgment is not entitled to full faith and credit. Appellant does not offer any new grounds which would require us to deny full faith and credit to the Alabama judgment. Instead, he merely reiterates his prior claims relating to lack of personal jurisdiction and lack of notice. We have thoroughly addressed these matters and we will not repeat our discussion here.

In sum, we conclude that Alabama's assertion of specific *in personam* jurisdiction over appellant was proper because appellant had sufficient minimum contacts with Alabama such that maintenance of the suit there comported with traditional notions of fair play and substantial justice. Moreover, the Alabama judgment was not obtained in violation of appellant's due process rights. Because appellant has failed to demonstrate any defense which would preclude us from enforcing the Alabama judgment, it must be accorded full faith and credit by the Pennsylvania courts. We therefore affirm the order of the lower court which upheld the judgment.

Order and judgment affirmed.

CAVANAUGH, J., notes his dissent.