Sue Kay Newman (now Sue Snider) and Oscar Newman, Jr. were divorced in 1978. In September 1992, Snider filed a petition seeking to have Newman held in contempt, alleging that Newman was in arrears in his child support and certain other obligations pursuant to the divorce judgment.
A hearing on Snider's petition was conducted on September 15, 1992, only as to the issue of child support. Jacqueline Berlin testified that she was Newman's common-law wife, and she further testified as to Newman's assets, income, and ability to pay child support. Following this hearing, the trial court entered an order[1] finding Newman in contempt for failure to pay child support, ordering him incarcerated for criminal contempt, and entering a judgment against him for the arrearage. All other issues were set for further proceedings.
Snider filed a motion to join Berlin as a party, alleging the possibility of commingled assets. This motion was granted, and Snider filed an amended petition, alleging that Berlin had cooperated with Newman in efforts to avoid his obligations; that Berlin had been actively involved in fraudulent conveyances of money, properties, and other assets; and that Berlin had admitted through testimony that she was Newman's common-law wife.
Subsequent proceedings were held in March 1993, and on June 1, 1993, following extensive findings of fact, the trial court concluded that Newman remained in criminal and civil[2] contempt, and it entered a judgment against Newman and Berlin jointly in the amount of $428,341.55. Berlin appeals. The dispositive issue on appeal is whether the trial court had personal jurisdiction over Berlin, a nonresident of this state.
The requirements for personal jurisdiction over a nonresident defendant are set forth in Rule 4.2(a)(2), A.R.Civ.P.:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
". . . .
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
The determination of whether a court has personal jurisdiction over a nonresident defendant must be made on a case- by-case basis. Steel Processors, Inc. v. Sue's Pumps,Inc. Rentals, 622 So.2d 910 (Ala. 1993). We will examine the relevant facts and attendant circumstances and analyze the relationship among the defendant, the forum, and the litigation to determine if the defendant has sufficient " 'minimum contacts' so *Page 892 
that 'the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " SteelProcessors, Inc. at 911 (citations omitted).
 "The foreseeability of the consequences of the defendant's activities is crucial to this analysis. To establish the necessary contacts, there must be a firm nexus between the acts of the defendant and the consequences complained of. Duke v. Young, 496 So.2d 37, 39 (Ala. 1986). 'The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?' "
Steel Processors, Inc. at 911-12.
The record reveals that Newman and Berlin began living together in Georgia in or around 1978, and that they had lived together for approximately 14 years. In 1992, Newman was arrested, and he ultimately pled guilty to charges of federal tax evasion and fraudulent use of a Social Security number. The record provides evidence that Newman used numerous aliases, and that he also used several false Social Security numbers to obtain bank accounts, insurance, licenses, etc. As part of Newman's plea agreement, he paid the Internal Revenue Service $536,209, representing a total civil tax liability, including penalties and interest, for the years 1985 to 1991. During this period of time, Newman had over $1 million in various foreign bank accounts, and he persisted in moving and secreting these funds for the admitted purpose of keeping them out of the reach of Snider and of the Internal Revenue Service.
Snider contends that there was a possibility of fraudulent conveyances and commingling of assets between Newman and Berlin. Berlin owns a house and some other property in Georgia and Florida; however, she denies receiving any funds from Newman to assist in purchasing any of these properties, and she denies any commingling of their funds. The record discloses that one of the houses that Berlin and Newman lived in sold for $292,000, and that Berlin owned other property in the same neighborhood as that house. The record reveals, however, that from 1981 to 1985, Berlin was employed as an assistant at an insurance company, and that her annual salary ranged from $13,000 to $19,000. In 1986, she was promoted to administrative assistant, with an annual salary of $30,000. She was dismissed from her employment at the insurance company in 1987. When questioned about where she received the money to buy this house, she claimed that she used her pension from the insurance company, as well as monetary gifts she said she had received from her now deceased uncles. The record also reveals that Berlin attempted to hide Newman on two occasions when he was sought by law enforcement officers, and that on those occasions, she even denied knowing Newman. Included in Newman's plea bargain on his federal charges was an agreement with the government not to prosecute Berlin on any related charges.
Snider contends that Berlin had sufficient minimum contacts pursuant to Rule 4.2(a)(2)(I), A.R.Civ.P., the "catchall" provision, first as the result of her voluntary appearance and testimony at the September 1992 hearing before she was added as a party. Additionally, Snider asserts that Berlin had sufficient minimum contacts in that the alleged fraudulent conveyances of Newman's property had an effect upon Snider, an Alabama resident. She argues that Berlin and Newman avoided business in Alabama because they could foresee responsibility under the divorce judgment.
A mere allegation that a nonresident has defrauded an Alabama resident, in itself, is not sufficient to establish in personam jurisdiction over the nonresident. Lowry v. Owens,621 So.2d 1262 (Ala. 1993); Shrout v. Thorsen, 470 So.2d 1222 (Ala. 1985) (Torbert, C.J., concurring specially). We are mindful that "Alabama has an interest in providing an effective means of recovery for a resident who has been damaged" by the fraudulent acts of a nonresident, Shrout at 1225; however, the test for in personam jurisdiction is whether the nonresident had sufficient contacts with this state such that it is fair and reasonable to require the nonresident to come to Alabama to defend an action. Rule 4.2(a)(2)(I), A.R.Civ.P.; Shrout, supra. *Page 893 
Based upon the particular facts of this case, this test was not met. We have thoroughly reviewed the voluminous record, including transcripts of the circuit court proceedings, transcripts from federal court proceedings, and a multitude of exhibits. While the record suggests the possibility that Berlin was acting in collusion with Newman to conceal assets to which Snider was entitled pursuant to the Alabama divorce judgment, Berlin's actions were not sufficient to satisfy the requirement of "minimum contacts" with Alabama. Berlin is a resident of Georgia, and the alleged fraudulent conveyances between Berlin and Newman would have occurred in Georgia. Furthermore, nothing in the record indicates that Berlin did business in Alabama, that she owned property in this state, or that she conducted any other activity in this state that would make it "fair and reasonable to require [Berlin] to come to this state to defend an action." Rule 4.2(a)(2)(I), A.R.Civ.P. There simply was not a sufficient nexus between the acts of Berlin and the consequences of those acts, and it was not reasonably foreseeable that Berlin would be sued in Alabama. SteelProcessors, Inc., supra. The trial court did not have personal jurisdiction over Berlin. Therefore, the trial court erred in entering the judgment against Berlin, and its judgment is due to be reversed.
We sympathize with the trial court's frustration in its efforts to enforce the provisions of the divorce judgment and in its attempts to deal with a contumacious and recalcitrant parent who obviously has willfully acted in violation of the divorce judgment. Furthermore, we agree with the trial court in its finding that Berlin lacked credibility in her testimony regarding her involvement with Newman and his assets. As an error-correcting court, however, we are bound by the decisions of our Supreme Court, and we have no alternative but to find that the trial court lacked personal jurisdiction over Berlin. Nothing in this opinion would prohibit Snider from pursuing an independent action in the courts of Georgia, which would undoubtedly have jurisdiction over Berlin.
REVERSED AND REMANDED.
ROBERTSON, P.J., concurs.
YATES, J., dissents.
[1] In April 1993, this court affirmed the trial court's denial of Newman's petition for a writ of habeas corpus following this order. Newman v. State, 623 So.2d 1171 (Ala.Civ.App. 1993).
[2] In a related case, Newman petitioned for a writ of habeas corpus, alleging that the trial court is improperly holding him in jail for continuing civil contempt. We affirmed the denial of that petition. Newman v. Sexton, 657 So.2d 894
(Ala.Civ.App. 1994).