Michael SEYMOUR, a minor, who sues By and Through his next friend and father, John D. SEYMOUR, and John D. Seymour, Individually, Plaintiffs,

v.

BELL HELMET CORPORATION, Defendant.

Civ. A. No. 85–T–618–S.

United States District Court, M.D. Alabama, S.D.

Oct. 2, 1985.

Steadman S. Shealy, Jr., Buntin & Cobb, Dothan, Ala., for plaintiffs.

Alan C. Livingston, Lee & McInish, Dothan, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This cause is before the court on the July 10, 1985, motion of plaintiffs Michael Seymour and John D. Seymour to alter or amend judgment following this court's July 1, 1985, dismissal of their suit for lack of personal jurisdiction over defendant Bell Helmet Corporation. For reasons that follow, the court concludes that the motion should be denied.

## I.

Michael Seymour, a minor, and John D. Seymour, his father, brought this product-liability action against Bell Helmet as a result of injuries Michael suffered in a 1984 motorcycle accident in Florida. The Seymours allege that the helmet Michael was wearing at the time of the accident was "defective" and "unreasonably dangerous" and contributed to his injuries. The helmet was made by Bell Helmet, which is incorporated in a state other than Alabama and has its principal place of business in California. The helmet was purchased in Georgia, although the Seymours are residents of Alabama. Two retail businesses in Alabama apparently sell helmets made by Bell Helmet, but neither retailer is affiliated with the corporation. These allegations and facts were the basis of the court's original dismissal for want of personal jurisdiction.

After the Seymours filed their motion to amend or alter judgment, further discovery revealed several additional factors of some relevance. First, Bell Helmet has shipped helicopter helmets to Fort Rucker, Alabama in connection with a contract it has with the United States Army. Second, Vetter Products, Inc. became a "division" of Bell Helmet in January 1985. Vetter sells its products directly to dealers, and some of these dealers are located in Alabama. Vetter does not handle Bell Helmet motorcycle helmets, however. Finally, Bell Helmet advertised its products in national publications, some of which, according to Bell Helmet, "surely reached Alabama."

## II.

In a diversity action such as this, the court must apply the law of the forum state to determine if it has jurisdiction over the person of the defendant. *Southwire Co. v. Trans-World Metals & Co., Ltd.*, 735 F.2d 440, 442 (11th Cir.1984). The law of Alabama provides for personal jurisdiction to the limits of due process, *Alabama Power Co. v. VSL Corp.*, 448 So.2d 327, 328 (Ala.1984), and for the exercise of jurisdiction to comport with due process, the de-

fendant must have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As this court explained in its original dismissal of this action, a court's exercise of jurisdiction over a defendant is either specific or general. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). A court exercises specific jurisdiction when the suit "aris[es] out of or [is] related to the defendant's contacts with the forum," 466 U.S. at —— n. 8, 104 S.Ct. at 1872 n. 8; general jurisdiction exists when the defendant's contacts with the forum state do not relate or give rise to the suit, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9, but the defendant nonetheless has "continuous and systematic general business contacts" with the state. 466 U.S. at 416, 104 S.Ct. at 1873. The standard for general jurisdiction is more stringent than that for specific jurisdiction. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984); *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir.1984).

The Seymours are arguing for the exercise of general rather than specific jurisdiction, for they admit that the helmet was purchased in Georgia and that the accident occurred in Florida. The Seymours have not offered any evidence suggesting that their claims arise from or are related to Bell Helmet's ties to Alabama.

In its July 1, 1985, order dismissing this lawsuit for lack of personal jurisdiction, this court concluded that mere evidence that retailers sell Bell Helmet helmets in Alabama was not enough under the due process clause to justify the exercise of general jurisdiction over the company. This court observed that

> [*Helicopteros* held] "that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over

a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. at 418, 104 S.Ct. at 1874. Here, sales in Alabama rather than purchases from Alabama are involved. The court must determine whether this matters.

In *Glater v. Eli Lilly & Co.*, 744 F.2d 213 (1st Cir.1984), the First Circuit Court of Appeals held that an Indiana drug company's sale of drugs and limited advertising in New Hampshire did not establish general jurisdiction over the company in New Hampshire in a suit where the plaintiff's mother bought and took the company's drugs in Massassachusetts. 744 F.2d at 217. In *Wolf v. Richmond City Hospital Authority*, 745 F.2d 904 (4th Cir.1984), the Fourth Circuit Court of Appeals similarly held in a malpractice action that a Georgia hospital's treatment of and receipt of payments from South Carolina residents, among other contacts, did not establish general jurisdiction over the hospital in South Carolina. 745 F.2d at 909–10; *cf. Cubbage v. Merchent*, 744 F.2d 665, 672 (9th Cir.1985) (Arizona hospital's receipt of payments from California residents established *specific* jurisdiction since "part and parcel of the ... cause of action and an integral part of the entire factual situation" of a malpractice action).

On this basis, the court finds that the contacts of Bell Helmet with Alabama that the Seymours have shown are insufficient to establish general jurisdiction over Bell Helmet in Alabama. The Seymours' evidence and uncontroverted allegations do not show that Bell Helmet has "continuous and systematic general business contacts" in Alabama. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873. They show only that Bell Helmet sells helmets in Alabama through two retail businesses apparently in no way affiliated with Bell Helmet. Such sales do not empower this court to adjudicate the Seymours' claims.

These observations remain appropriate.

■ It should be emphasized that the court's observations and conclusions are

limited to instances, such as here, where there is no evidence as to the volume, extent and pervasiveness of a nonresident defendant's sales in the forum state and there is no evidence as to what percentage of the nonresident defendant's total sales are in the forum state. Here, the only evidence the Seymours have presented is that two retailers have sold *some* Bell Helmet helmets in this state. This court does not reach the issues of whether general jurisdiction could be appropriately exercised over a nonresident defendant where there is evidence of substantial and pervasive sales of its product in the forum state or evidence that the forum state is the principal market for its product.

The evidence the Seymours have submitted since the dismissal of this lawsuit and the filing of their motion to amend and alter judgment is also of no help to them. They point to Bell Helmet's shipment of helicopter helmets to Fort Rucker as evidence that general jurisdiction exists, but it is unclear from the evidence whether the shipment was an isolated event or part of an on-going business arrangement. Assuming that a company's direct sales in the forum state could constitute "continuous and systematic general business contacts" in some cases, the court cannot say that such contacts are present here because the Seymours have failed to indicate the frequency or value of Bell Helmet's sales in Alabama. Without some indication of the quality and extent of Bell Helmet's sales to Fort Rucker, it is impossible to know whether there were any "continuous and systematic" ties to Alabama.

The evidence is similarly vague with respect to Vetter Products, Inc., a "division" of Bell Helmet. First, there is no evidence concerning the quality and extent of Vetter's contacts with Alabama. Furthermore, there is no indication that Bell Helmet exercises any significant control over Vetter or that Vetter acts in any manner on Bell Helmet's behalf in Alabama. *Cf. Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707 (1st Cir.1966) (defendant corporation not "doing business" under Massachusetts long-arm statute despite presence of wholly-owned subsidiary in Massachusetts that sells defendant's products because defendant and subsidiary act fairly independently of one another). Unless the Seymours can show that Vetter is closely tied to Bell Helmet, evidence concerning Vetter's activities in Alabama could only indicate that Vetter—rather than Bell Helmet—is subject to Alabama's jurisdiction.

Bell Helmet's national advertising campaign is also of little help to the Seymours, for a company can hardly be said to have "continuous and systematic" contacts with a state simply because its national advertisements happen to reach that state. Indeed, if a state were free to exercise jurisdiction over any company that advertised nationally on the grounds that some of the advertising must have reached that state, virtually every major company would be subject to nationwide jurisdiction.

The Seymours' contention that jurisdiction in Alabama is appropriate because they themselves are Alabama residents is also without merit. Admittedly, the home state of the plaintiff may be relevant if the nonresident defendant's activities in that state gave rise to the suit and the defendant chose to act in that state precisely because the plaintiff lives there. *See, e.g., Calder v. Jones*, 465 U.S. 783, 788–89, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984). The plaintiff's home state may also be relevant in determining whether the forum state has a sufficient interest in providing redress for injuries that may arise from the type of forum state activity which the nonresident defendant caused or in which the defendant engaged, such as would justify the state's exercise of jurisdiction over the defendant. *See, e.g., McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (California has jurisdiction over foreign corporation that insured California resident in part because state "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims").

However, in both *Calder* and *McGee*, the plaintiff's residence was simply one among several factors indicating that the nonresident defendant's contacts with the forum state were sufficient to justify the state's exercise of personal jurisdiction over the defendant. At all times, the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* — U.S. —, —, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The mere fact that the plaintiff lives in the forum state is not enough to give that state jurisdiction. As the Supreme Court recently reaffirmed in *Burger King Corp.,*

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws.

— U.S. at —, 105 S.Ct. at 2183, *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

Nor does all of the above evidence considered together warrant the exercise of general jurisdiction over Bell Helmet. The Seymours have failed to present a reasonably complete picture of Bell Helmet's contacts with Alabama; and the incomplete picture that does emerge depicts contacts of a limited and vague nature, contacts which do not reflect a continuous and systematic business presence in the state.

### III.

It is up to the plaintiff to establish personal jurisdiction over a defendant, *Bracewell v. Nicholson Air Service, Inc.,* 748 F.2d 1499, 1503 (11th Cir.1984); *Product Promotions, Inc. v. Cousteau,* 495 F.2d

\* Under 28 U.S.C.A. § 1406(a), a district court without jurisdiction over a defendant has the authority to transfer the action to another district court with jurisdiction over the defendant.

483, 490 (5th Cir.1974). Despite the additional discovery, the Seymours have not shown that Bell Helmet's ties with Alabama meet the "continuous and systematic" standard articulated in *Helicopteros.* Their motion to alter or amend judgment should therefore be denied.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the July 10, 1985, motion of plaintiffs Michael Seymour and John D. Seymour to alter or amend judgment be and it is hereby denied, with leave to file, within ten days from the date of this order, a motion to vacate the dismissal and transfer this action to another United States district court.\*

*See Cox Enterprises, Inc. v. Holt,* 691 F.2d 989 (11th Cir.1982) (per curiam); *Aguacate Consolidated Mines, Inc. of Costa Rica v. Deeprock, Inc.,* 566 F.2d 523 (5th Cir.1978).