621 So.2d 1262 (1993)
Rodney LOWRY
v.
Richard OWENS and Fitzner Pontiac-Buick-Cadillac, Inc.
1920104.
Supreme Court of Alabama.
May 28, 1993.
*1263 J.O. Isom, Hamilton, for appellant.
Franklin Williams of Gholson, Hicks, Nichols & Ward, Columbus, MS, for appellees.
SHORES, Justice.
Rodney Lowry appeals from the judgment of the Marion County Circuit Court dismissing his complaint for lack of personal jurisdiction over the defendants, Richard Owens and Fitzner Pontiac-Buick-Cadillac, Inc. ("Fitzner"). We reverse and remand.
The issue in this case is whether the defendants had sufficient contacts with Alabama to satisfy the due process clause of the Fourteenth Amendment so as to subject them to this civil action in an Alabama court.
The complaint underlying the jurisdictional question alleges fraud in the sale of an automobile. Henry Beasley and Rodney Lowry were stockholders in L & B Auto and Truck Sales ("L & B") in Winfield, Alabama. Beasley had worked for Burleson GMC, an automobile dealership in Winfield, Alabama, before the events giving rise to this action. Fitzner Pontiac-Buick-Cadillac, located in Columbus, Mississippi, is a Mississippi corporation licensed to do business in the state of Mississippi. Beasley testified that he had purchased six or seven used cars from Fitzner in Columbus, Mississippi, for resale in Alabama by Burleson GMC between 1985 and 1991, and that he had also purchased two or three cars in Columbus from Fitzner for resale in Alabama by L & B. Beasley made these purchases through Richard Owens, who was the general sales manager for Fitzner in Columbus.
Beasley, on behalf of Lowry, telephoned Owens in Columbus and told him that Lowry was interested in buying a new Cadillac automobile. Beasley testified that Owens ordered a Cadillac with Lowry's specific options and that Owens later called Beasley in Winfield, Alabama, to tell him that Lowry's car had arrived. Mr. Lowry, his wife, and Beasley went to Columbus, Mississippi, to pick up the car in October 1988. They were shown, and purchased, a white Cadillac that they contend was similar to, but not equipped exactly the same as, the one they had ordered. The bill of sale and odometer mileage statement indicate that the car was a new 1989 Cadillac DeVille sold by Fitzner to Burleson GMC of Winfield, Alabama. The new car order form shows "R. Owen" [sic] as the salesperson and "Rod Lowery" [sic] as the purchaser. Other paperwork in the record related to the purchase of the car displays Lowry's name and his address in Winfield, Alabama.
When Lowry tried to sell the 1989 DeVille two years later, an inspection revealed that the left side of the car had apparently been wrecked and then repaired. Rodney Lowry sued Fitzner and Owens, alleging fraudulent misrepresentation and deceit arising out of his October 1988 purchase of the Cadillac. After a hearing and the admission of affidavits into evidence, the circuit court granted the motion of the defendantswho were nonresidentsto dismiss for lack of jurisdiction. *1264 Lowry appeals, contending that jurisdiction over the defendants was proper under Alabama's long-arm jurisdiction rule, A.R.Civ.P. Rule 4.2(a).
Lowry filed affidavits of the tax collectors of Marion County and Lamar County, Alabama, in opposition to the defendants' motion to dismiss. Billy Moore, the tax collector of Lamar County, stated, based on his personal knowledge as the custodian of Lamar County tax records, that 10 Lamar County, Alabama, residents had purchased automobiles from Fitzner Pontiac-Buick-Cadillac, Inc., of Columbus, Mississippi, over a four-month period October 1, 1991, through February 12, 1992, and had paid to him county and state taxes on those vehicles. Susie Post, the tax collector of Marion County, stated, based on her personal knowledge as the custodian of Marion County tax records, that six Marion County, Alabama, residents had purchased automobiles from Fitzner Pontiac-Buick-Cadillac, Inc., of Columbus, Mississippi, during the period February 16, 1989, through February 18, 1992, and had paid to her county and state taxes on those vehicles. Henry Beasley testified that he had purchased several used cars from Fitzner in Columbus, Mississippi, for resale by automobile dealerships in Winfield, Alabama, both before and after he purchased the 1989 DeVille for Lowry. Beasley also testified that Danny Little was a Fitzner employee who had lived in Winfield and later moved to Columbus, and that Little had solicited business from him in Alabama while employed by Fitzner, although he did not know if Little had been directed to do so by Fitzner. Ray Thompson, a Hamilton, Alabama, resident, testified that he had bought a car from Fitzner in Columbus, and ownership papers bearing his Alabama address were admitted into evidence. Thompson swore that in Alabama he had seen and heard Fitzner's television and radio advertisements that had been broadcast from Columbus, and that Fitzner had advertised on a radio station in Fayette, Alabama, in 1989. George Fitzner, president of Fitzner Pontiac-Buick-Cadillac, swore, by affidavit admitted into evidence, that Fitzner Pontiac-Buick-Cadillac did not actively advertise by radio, television, or newspaper in Marion County, Alabama, and that it paid no Alabama use or sales tax. His supplemental affidavit, stating that Danny Little was not authorized to make wholesale car sales, or to solicit sales in Alabama, was stricken from the record.
The reach of personal jurisdiction of an Alabama court over nonresident defendants under Rule 4.2(a)(2), A.R.Civ.P., extends to the permissible limits of due process. Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala.1983). A key issue in this case is whether each nonresident defendant has sufficient contacts with Alabama for its courts to acquire personal jurisdiction over that defendant. Rule 4.2(a)(2) provides, in relevant part:
"(2) SUFFICIENT CONTACTS. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:
". . . .
"(I) Otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend the action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."
To determine whether a nonresident defendant has "sufficient contacts with this state for the trial court to obtain in personam jurisdiction, we must necessarily examine all the relevant facts and attendant circumstances of the case. J. Moore, 2 Moore's Federal Practice § 4.41-1[3] at 4-449." Hanby, supra, at 145; Shrout v. Thorsen, 470 So.2d 1222, 1224 (Ala.1985). The question of jurisdiction is always a fundamental one, and we will review the entire record in answering that question. *1265 Mobile & Gulf R.R. v. Crocker, 455 So.2d 829, 831-32 (Ala.1984).
A nonresident defendant must have a certain level of contacts with a forum state in order for that state's courts to acquire personal jurisdiction over that defendant. Millette v. O'Neal Steel, Inc., 613 So.2d 1225 (Ala.1992); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Jurisdiction is proper when the defendant has such contacts "that maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Hanby, supra, at 144, quoting International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
"The focal point of the analysis is the alleged `contacts' which a defendant has with the forum state. Courts look to `the relationship among the defendant, the forum, and the litigation.' Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).... [The nonresident defendant's physical] presence or absence from the forum state is not the foundation upon which a determination is made. Physical presence merely provides strong, objective evidence of sufficient contacts. The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?
". . . .
"Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities. There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts."
Duke v. Young, 496 So.2d 37, 39 (Ala.1986).
In Keelean v. Central Bank of the South, 544 So.2d 153, 156 (Ala.1989), we set forth a two-part analysis for determining whether an Alabama court can exercise personal jurisdiction over a nonresident defendant:
"1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
"2) the determination of the degree of contact that the nonresident defendant has with the state."
Id. This analysis arose from a synthesis of the constitutional principles discussed earlier in this opinion.
The United States Supreme Court held in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), that a New York automobile retailer could not be subjected to a negligence action in Oklahoma based on a collision there involving a car sold by the New York retailer to New York residents. Crucial to the Court's analysis was that the retailer carried on "no activity whatsoever in Oklahoma." Id. at 295, 100 S.Ct. at 566. The retailer did not solicit business in Oklahoma "through salespersons or through advertising reasonably calculated to reach the State"; neither did it regularly sell cars to Oklahoma customers or residents or indirectly "serve or seek to serve the Oklahoma market." Id. There is evidence, however, that Fitzner solicited business in Alabama through advertising reasonably calculated to reach this State, and that Fitzner served the Alabama market by selling cars to Alabama residents.
In Ex parte Pope Chevrolet, Inc., 555 So.2d 109 (Ala.1989), a case factually similar to this one, we held that there were sufficient contacts to uphold personal jurisdiction over a nonresident defendant, and we addressed issues remarkably similar to those before us today:
"Can an automobile dealer be said to have purposefully availed itself of the benefits and protections of the laws of another state simply by selling a vehicle to one whom the dealer knows to be a resident of another state? Is the fact that defendant's advertising reached the plaintiff significant, even if the defendant did not aim its advertising at Alabama residents?"
Id. at 111. In Pope Chevrolet, an Alabama resident sued a Georgia automobile dealer, *1266 alleging fraud in its sale to her, in Georgia, of a pick-up truck. Although less than one-tenth of one per cent of Pope Chevrolet's total sales were to Alabama residents, the plaintiff estimated from the dealership's figures that it sold eight or nine cars per year to Alabama residents. We found sufficient contacts to establish jurisdiction, based in part on the fact that Pope Chevrolet was a large-volume dealership that did some of its business with residents of Alabama, and in part on the fact that it advertised in a regional Atlanta newspaper and on a regional television station whose programming was broadcast into other states, including Alabama. Id. at 113-14.
The Court of Civil Appeals, in Garrett v. Key Ford, Inc., 403 So.2d 923, 925 (Ala.Civ. App.1981), found sufficient contacts to allow jurisdiction over a Florida dealership that had sold a car to an Alabama resident with knowledge that the car would be used in Alabama; had advertised across the state line to Alabama customers in a particular locale and had further solicited their business by mail; and had "prepared and forward[ed] the necessary papers in order to obtain an Alabama title for the truck." 403 So.2d 923-25.
Our decision in Pope Chevrolet indicates that an automobile dealership's advertising, even though not targeted at a particular locale within Alabama, may contribute toward establishing sufficient contacts when it is reasonably calculated to reach an audience in Alabama and when the dealership knowingly makes sales to residents of Alabama. Pope Chevrolet, supra.
We noted in Pope Chevrolet:
"`[W]here individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.'"
555 So.2d at 111, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 at 473-74, 105 S.Ct. 2174 at 2182-83, 85 L.Ed.2d 528 (1985).
Lowry's allegation of fraud is an important aspect of our analysis of the degree of contacts between Fitzner and Alabama, although a mere allegation of purposeful or intentional fraud, standing alone, is not sufficient to establish jurisdiction. See Shrout v. Thorsen, supra, at 1226 (special concurrence of Chief Justice Torbert). However, "Alabama has an interest in providing an effective means of recovery for a resident who has been damaged, especially in a situation like the one [where the plaintiff claims that a nonresident defendant had an integral part in an alleged fraud]." Id. at 1225-26. We cannot allow a nonresident defendant accused of fraud "to manipulate our decisions on in personam due process to effect a shield against his [alleged] improper conduct." Id. at 1225.
In Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court examined the impact of the nature of the defendants' intentions and activities on the jurisdictional question. The foreseeability of the consequences of the defendants' activities was significant in the Court's determination that jurisdiction was proper. Because the defendants in Calder were "not charged with mere untargeted negligence"; and because "their intentional, and allegedly tortious, actions were expressly aimed at California"; and because they knew that their distribution of a libelous article in California would in that state injure the plaintiff, a California resident, the Court found jurisdiction over the defendant Florida residents. 465 U.S. at 789-90, 104 S.Ct. at 1487.
Selling a repaired automobile as new, to an Alabama resident, is not "mere untargeted negligence," but an intentional wrongful act with foreseeable consequences. Fitzner's place of business is located within 15 miles of the Alabama state line, and Fitzner conducts some of its business with Alabama residents. It advertises on Mississippi television and radio stations that broadcast into Alabama; it is alleged *1267 to have advertised on an Alabama radio station at the time of the purported fraud; and one of its employees is alleged to have solicited sales within the state of Alabama. Thus, it can reasonably be said to have solicited business from Alabama. See Pope Chevrolet, 555 So.2d at 113-14; Garrett v. Key Ford, Inc., 403 So.2d at 925. Requiring Fitzner to defend an action in Marion County, Alabama, does not violate the principles of "fundamental fairness," because Fitzner's place of business is only approximately 75 miles from the Marion County courthouse. See Pope Chevrolet, supra, at 114.
Appellee Owens contends that he, individually, should not be subject to the jurisdiction of Alabama courts, because, he says, his actions do not give rise to an inference that he should reasonably have anticipated being haled into court here, and because, he says, in personam jurisdiction over an employee cannot be predicated upon jurisdiction over the corporation alone. Owens cites to cases in which the "fiduciary shield" doctrine prevented jurisdiction over nonresident corporate employees because the activity of individual employees was not sufficient to establish the necessary contacts or to otherwise subject them to our long-arm rule. Thames v. Gunter-Dunn, Inc., 373 So.2d 640, 642-43 (Ala.1979); Pierce v. Heyman, 480 So.2d 1185, 1186 (Ala.1985); Brooks v. Inlow, 453 So.2d 349, 350-51 (Ala.1984). However, we have earlier distinguished these three cases on their facts, because "[i]n each instance the tortious act complained of was what Calder referred to as `mere untargeted negligence.'" Duke v. Young, 496 So.2d at 40. Lowry's allegation is that Owens fraudulently misrepresented the car as new when Owens sold it to him and that in fact it had been wrecked and repaired. This is not an example of mere untargeted negligence; it is an intentional, and allegedly tortious, action expressly aimed at Alabama. Calder, supra, 465 U.S. at 789, 104 S.Ct. at 1487; Duke, supra, at 40.
After carefully reviewing the record and considering the particular facts and circumstances of this case, we conclude that Lowry has shown that both Fitzner Pontiac-Buick-Cadillac and Owens have had at least the minimum contacts necessary to subject them to the jurisdiction of the courts of this State.
For the foregoing reasons, the judgment of the trial court is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and KENNEDY, J., concur.
MADDOX and HOUSTON, JJ., concur specially.
MADDOX, Justice (concurring specially).
I concur in the holding here that the automobile dealership had sufficient contacts with the State of Alabama that "it is fair and reasonable to require [the dealership] to come to this state to defend an action." Rule 4.2(a)(2)(I). As I view it, in determining whether there are sufficient contacts, we should review the facts much as we do when determining, for venue purposes, whether a defendant is "doing business" within a particular county. In short, I think that the "sufficient contacts" rule for service of process is not appreciably different from the "doing business" rule that is applied in determining the venue of an action against a foreign corporation. In Ex parte Snoddy, 487 So.2d 860 (Ala.1986), this Court held that a moving company that openly and publicly offered its moving services for hire in a county, through advertisements in the yellow pages, was doing business in that county for venue purposes. The activities of the automobile dealership here seem to be just as pervasive as, if not more than those proved in Snoddy.
As I view the matter, the "nexus" test is substantially the same, whether the question is a question of venue, a question of the applicability of the long-arm rule for service of process, or a question of whether the activity is intrastate or interstate commerce.[1]
*1268 HOUSTON, Justice (concurring specially).
I agree that the plaintiff has established sufficient contacts to subject Fitzner Pontiac-Buick-Cadillac and Owens to the jurisdiction of Alabama courts. However, Alabama courts must apply the substantive law of Mississippi, including the law of damages, as to all of the acts alleged as legal fraud, fraudulent suppression, and wantonness that took place in Mississippi.
NOTES
[1] I do not know whether the question of arbitration will arise in this action, but in Ex parte Warren, 548 So.2d 157 (Ala.1989), I stated that I thought a sufficient nexus with interstate commerce existed for the provisions of the Federal Arbitration Act to apply.