**Lynda BUTLER, Plaintiff,**

v.

**BEER ACROSS AMERICA; Merchant Direct; and Shermer Specialties, Inc., Defendants.**

No. CV99–H–2050–S.

United States District Court, N.D. Alabama, Southern Division.

Feb. 10, 2000.

Kathryn H. Sumrall, Donald D. Knowlton, II, Garrison & Sumrall, PC, Birmingham, AL, for Plaintiff.

Warren B. Lightfoot, Anne Sikes Hornsby, Lightfoot Franklin & White LLC, Birmingham, AL, for Defendants.

## ORDER

HANCOCK, Senior District Judge.

The Court has before it the August 6, 1999 motion of defendants Beer Across America, Merchant Direct, and Shermer Specialties (collectively "Beer Across America") to dismiss the present action for lack of personal jurisdiction.[1] Pursuant to the Court's October 8, 1999 order, the motion came under submission on December 17, 1999.

On June 8, 1999, plaintiff Lynda Butler initiated the present action by filing a complaint in the Circuit Court of Shelby County, Alabama. The complaint asserts a claim under the Civil Damages Act, section 6–5–70 of the Alabama Code, arising from the sale of beer to plaintiff's son, Hunter Butler, by the defendants via the Internet. (*See* Compl. ¶¶ 1–2.) The Civil Damage Act[2] provides for a civil action by the

---

1. On September 1, 1999 the defendants filed a supplemental motion to dismiss premised upon the Commerce Clause and the Twenty–First Amendment to the United States Constitution. Given the disposition of Beer Across America's initial motion to dismiss, the supplemental motion need not be considered.

2. The full text of the Alabama Civil Damages Act reads as follows:

> Either parent of a minor, guardian, or a person standing in loco parentis to the minor having neither father nor mother shall have a right of action against any person who unlawfully sells or furnishes spiritous

parent or guardian of a minor against anyone who knowingly and illegally sells or furnishes liquor to the minor. *See* Ala. Code § 6–5–70 (1993). On August 6, 1999 defendants timely removed the action to this Court; removal was based upon diversity of citizenship given that plaintiff is a citizen of *Alabama* and that the defendants are three related *Illinois* corporations engaged in the marketing and sale of alcoholic beverages and other, complementary merchandise. Upon removal, the defendants simultaneously moved for dismissal.

The issue of personal jurisdiction presented in this case has been briefed extensively by both parties and the Court has received numerous evidentiary submissions. First, on August 12, 1999 defendants filed the August 9, 1999 affidavit of Louis A Amoroso. On August 30, 1999 plaintiff submitted evidence in opposition to the motion to dismiss.[3] Defendants then filed an initial brief in support of their motion to dismiss on September 10, 1999. Plaintiff responded on September 13, 1999 with a brief in opposition to dismissal[4] and on October 4, 1999 with a supplemental brief. Oral argument was held at the Court's regular motion docket on October 8, 1999, following which the Court allowed limited discovery on the issue of personal jurisdiction. (*See* Oct. 12, 1999 Order.) Following a period of limited discovery, plaintiff made evidentiary submissions on November 15, 1999.[5] Next defendants filed a supplemental brief in support of their motion to dismiss on November 29, 1999, and, finally, on December 10, 1999 plaintiff filed a response to the defendants' supplemental brief with attached excerpts from plaintiff's November 15, 1999 evidentiary submissions. Defendants' motion is now ripe for consideration.

■ The burden of establishing personal jurisdiction over a nonresident defendant is on the plaintiff. *See Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 255 (11th Cir.1996). To survive a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff must demonstrate a prima facie case of personal jurisdiction, which requires the presentation of evidence sufficient to withstand a motion for a directed verdict. *See Cable/Home Communication v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990). In considering whether such a showing has been made, the court must accept as true all uncontroverted facts alleged in the complaint and must also draw all reasonable inferences arising from controverted assertions of fact in the light most favorable to the plaintiff. *See Robinson,* 74 F.3d at 255.

Questions of personal jurisdiction require an application of general legal principles to the particular facts contained in the complaint and in the parties' evidentiary submissions. *See Alexander Proudfoot Co. World Hqtrs. L.P. v. Thayer,* 877 F.2d 912, 914 (11th Cir.1989). Here, the facts are simple. In early April of 1999, plaintiff's minor son, who apparently was left home unsupervised (but with a credit card issued in his name) while his parents vacationed, placed an order for twelve bottles of beer with defendants through Beer Across America's Internet site on the World Wide Web. Under the applicable

---

liquors to such minor and may recover such damages as the jury may assess, provided the person selling or furnishing liquor to the minor had knowledge or was chargeable with notice or knowledge of such minority. Only one action may be commenced for each offense under this section. Ala.Code. § 6–5–70 (1993).

3. Plaintiff submitted an invoice from defendant Merchant Direct, a copy of the *Something's Brewing* newsletter, and printed copies of pages from www.beeramerica.com.

4. Attached to the motion as exhibits were copies of the same evidence submitted on August 30, 1999.

5. Plaintiff submitted as Exhibit A the November 3, 1999 deposition of Louis A. Amoroso with attached deposition exhibits and as Exhibit B a number of invoices and correspondence with two Alabama brewers.

provisions of the U.C.C., the sale occurred in Illinois.[6] The beer was then shipped to plaintiff's son in Alabama and delivered to the Butler residence by the carrier acting, the entire time, as the agent of the plaintiff's son. The sale was not discovered by plaintiff until she returned home and found several bottles of beer from the shipment remaining in the family's refrigerator. Together, these facts present the following question: whether personal jurisdiction properly may be asserted by a federal court sitting in diversity in Alabama over a nonresident Illinois defendant in an action arising from a sale made in Illinois solely in response to an order placed by an Alabama resident via the Internet?

■ Having framed the issue, the Court turns to the multi-part analysis implicated by this question. The first part of the analysis requires a consideration of state law because the reach of a federal diversity court's jurisdictional power over a nonresident defendant may not exceed the limits allowed under state law. See Robinson, 74 F.3d at 256; Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990); Cable/Home, 902 F.2d at 855; Alexander Proudfoot, 877 F.2d at 919; Brown v. Astron Enters., Inc., 989 F.Supp. 1399, 1403 (N.D.Ala.1997). If a basis for personal jurisdiction is found under the state's long arm statute, the court then conducts a two-part due process analysis. See Madara, 916 F.2d at 1514; Brown, 989 F.Supp. at 1403.

■ As one arm of the due process analysis, the court initially must determine whether at least minimum contacts exist between the defendant and the jurisdiction. See Madara, 916 F.2d 1510, 1515–16; Cable/Home, 902 F.2d at 857. The significant question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"? World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The level and nature of such conduct and connections may support either general or specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). See also Madara, 916 F.2d at 1516 n. 7; Cable/Home, 902 F.2d at 857 n. 41. General jurisdiction may be exercised when a defendant's contacts with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion of power over the defendant by that state's courts no matter the nature or extent of the relationship to the forum entailed in the particular litigation; if general jurisdiction is established, absolutely no connection need be shown between the state and the claim for the defendant to be summoned constitutionally before that forum's courts. See Helicopteros, 466 U.S. at 414–15 & n. 9, 104 S.Ct. 1868. In contrast, specific jurisdiction may be based upon less extensive contacts, but jurisdiction will lie only in

**6.** According to the sales invoice and the shipping documents, the beer was essentially sold F.O.B. seller, with the carrier acting as the buyer's agent. The sales invoice and shipping documents also correctly note that ownership of the goods passed to plaintiff's son upon tender to the carrier, which is consistent with both Alabama's and Illinois's versions of the U.C.C., providing that title passes at the time and place of shipment when the contract does not require the seller to make delivery at the destination. See Ala.Code § 7–2–401(2)(a) (1997); 810 Ill.Comp.Stat. 5/2–401(2)(a) (West 1999). Under both codes, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price." Ala.Code § 7–2–106(1) (1997); 810 Ill.Comp.Stat. 5/2–106(1) (West 1999). Clearly, then, the sale was completed in Illinois. That the place of sale was Illinois is strengthened by the fact that the invoice included a charge for sales tax but no charge for beer tax; Alabama law requires that sales tax be collected for the out-of-state sale of goods which are then shipped to the purchaser in Alabama but requires that beer tax be collected on only sales made within Alabama. Compare Ala.Code §§ 28–3–184(a), –190(a) (1998) (providing for excise taxes on beer sales) with Ala.Code 40–23–1(5) (1998) (defining "sale or sales" for purposes of the sales tax). This case is no different than one in which a person has purchased duty free items in a distant locale and then arranged for their shipment to that person's regular residence.

those matters which are related to or which arise from those contacts. *See id.* at 414 & n. 8, 104 S.Ct. 1868. Regardless of the specific or general nature of the contacts in question, for purposes of satisfying due process, they must be purposeful on the part of the defendant; "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See also Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ("Appellants have simply had nothing to do with the State of Delaware. Moreover, appellants had no reason to expect to be haled before a Delaware court."). Jurisdiction will not be supported because of "random, fortuitous, or attenuated contacts ... or because of the unilateral activity of a third person." *Madara*, 916 F.2d at 1516 (citations omitted). *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (finding that "regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous"); *Hanson*, 357 U.S. at 253, 78 S.Ct. 1228 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir.1996). However, even if minimum contacts are found, the court must still address the second prong of the due process analysis. *See Madara*, 916 F.2d at 1517.

▪ In addition to minimum contacts, due process mandates a consideration of the fairness in forcing the defendant to litigate in a foreign forum. *See id.; Cable/Home Communication v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir.1990). This fairness inquiry is rooted in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its pronouncement that a nonresident defendant must "have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). To answer this inquiry into "fair play and substantial justice," the court will examine the nature of the defendant's contacts with the forum in light of additional factors, including the burdens on the defendant of litigating in the foreign forum; the interests of the forum state in overseeing the litigation; the interests of the plaintiff in efficient, substantial relief; the interests of the interstate judicial system in economical dispute resolution; and the joint interests of the states in promoting basic social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Madara*, 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 477 , 105 S.Ct. 2174; *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559). These additional factors may be used to bolster a conclusion that the exercise of personal jurisdiction is actually proper when fewer than the otherwise sufficient number of minimum contacts are present or to defeat jurisdiction in the face of strong evidence of otherwise sufficient, purposeful connections between the defendant and the forum state. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174. In summary, only if the forum state's laws permit jurisdiction over the nonresident defendant and both prongs of the due process inquiry are satisfied may that defendant constitutionally be haled into the forum state's courts. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996). The Court now applies this extended analysis to the facts of the present case.

▪ The Court's initial inquiry concerns the reach of Alabama's long arm statute, which this Court must interpret as would an Alabama state court. *See id.* at 256–57.

The Alabama long arm statute provides, in part, as follows:

A person has sufficient contacts with the state when that person ... otherwise having some minimum contact with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action ... so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.

Ala.R.Civ.P. 4.2(a)(2)(I). Consequently, the reach of Alabama's long arm jurisdiction extends to the full limits of federal due process. *See Martin v. Robbins*, 628 So.2d 614, 617 (Ala.1993); *Ex parte Pope Chevrolet, Inc.*, 555 So.2d 109, 110 (Ala. 1989); *Dillon Equities v. Palmer & Cay, Inc.*, 501 So.2d 459, 461 (Ala.1986). *See also Brown v, Astron Enters., Inc.*, 989 F.Supp. 1399, 1404 (N.D.Ala.1997). Because Alabama's nonresident personal jurisdiction is coextensive with the constitutional requirements of due process, the state law and due process analyses collapse into a single inquiry, to which the court now turns. *See Brown*, 989 F.Supp. at 1404.

■ Regarding the minimum contacts element of due process analysis, plaintiff asserts that defendants' contacts with the state of Alabama are sufficient for either general or specific jurisdiction. To support general jurisdiction, the plaintiff cites not only the sale to her son but also the defendants' sales (in Illinois) to other Alabama residents as well as the sale of beer to defendants by two Alabama brewers through a non-party Illinois wholesaler. However, the plaintiff has not offered any competent evidence to seriously controvert the defendants' averments that they are not registered to do business in Alabama; that they own no property in the state; that they maintain no offices in the state; that they have no agents in Alabama; that their key personnel have never even visited the state; and that they do not place advertisement with Alabama media outlets (except for what nationally placed adver-

tisements may reach the state) or engage in any other significant promotions targeting the state, which would rise to such a level as would justify an exercise of general jurisdiction by this state's courts. What plaintiff has offered is simply not sufficient to conclude that Beer Across America can be brought before an Alabama tribunal for any claim that any plaintiff may bring. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 410–11, 416–419, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (finding no general jurisdiction where the nonresident defendant's C.E.O. had visited the forum state for contract negotiations, the defendant had accepted checks drawn on a bank located in the forum state, the defendant had purchased more than $4,000,-000.00 in equipment from a supplier in the forum state over several years, and the defendant had sent personnel to the forum state for training); *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 517–18, 43 S.Ct. 170, 67 L.Ed. 372 (1923) (finding no jurisdiction where defendant's contacts with state consisted of periodic purchases of large quantities of its retail stock from firms in the forum state and regular business trips to the forum state in connection to those purchases). *Cf. Perkins v. Benguet Consol. Min Co.*, 342 U.S. 437, 447–49, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (finding that due process would not be offended by an exercise of general jurisdiction over a corporate defendant where the defendant had systematically and continuously conducted a portion of its general corporate activities in the forum state).

Although specific jurisdiction presents a different question, the ultimate answer is the same. Alabama courts have found sufficient minimum contacts to support *in personam* jurisdiction over nonresident defendants in other actions related to out-of-state sales of goods to Alabama residents for use in this state, but the contacts in those cases differed both in kind and extent from the *de minimis* connections in the instant case. *See Lowry v. Owens*, 621 So.2d 1262 (Ala.1993); *Ex parte Pope Chevrolet, Inc.*, 555 So.2d 109 (Ala.1989); *Atlanta Auto Auction, Inc. v. G & G Auto*

*Sales, Inc.,* 512 So.2d 1334 (Ala.1987). First, the Alabama state court cases involved the sale of automobiles, with each transaction presumably worth thousands of dollars, as opposed to the less than $25.00 purchase here. More important than the size of the purchases, however, the sellers in *Lowry, Pope,* and *Atlanta Auto Auction,* had actively courted the Alabama market through advertisements on regional and local radio stations, in regional newspapers, and through the mails. *See Lowry,* 621 So.2d at 1264–66 (discussing evidence that the defendant had placed advertisements reasonably calculated to reach Alabama residents on an Alabama radio station and on Mississippi radio and television stations that broadcast into Alabama); *Pope,* 555 So.2d at 110, 114 (noting that the defendant had advertised in a regional newspaper and on a regional television station that reach Alabama residents); *Atlanta Auto Auction,* 512 So.2d at 1335 (discussing the fact that defendant had for many years regularly solicited business from plaintiff and other Alabama residents through direct mail brochures). Evidence was also offered in one case that the defendant's agent had even solicited sales within Alabama. *See Lowry,* 621 So.2d at 1264. Here, Beer Across America does not advertise with local or regional media specifically targeting the Alabama market,[7] and plaintiff's son was never directly solicited by defendants by any means prior to placing his order. Also, in the *Lowry* case as in *Atlanta Auto Auction,* the sale in question was not an isolated transaction but one in a series of car sales made by the same defendant to the same Alabama plaintiff over a number of years. *See Lowry,* 621 So.2d at 1263; *Atlanta Auto Auction,* 512 So.2d at 1335. And the defendant in *Pope* regularly sold to Alabama residents on an annual basis automobiles collectively worth more than $100,000.00. *See Pope,* 555 So.2d at 113. In contrast, Beer Across America did not enter into any continuing relationship with plaintiff's son, but rather made a single sale amounting to $24.95.[8] The defendants' total sales, including nonalcoholic merchandise, to Alabama residents for use in the state represent, on average, only a few hundred orders per year, which combined are worth significantly less than $100,000.00, with Internet orders, such as plaintiff's son's, accounting for a mere three to four percent of that total. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 122, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (Stevens, J., concurring in part and concurring in the judgment) (suggesting that the value and volume of sales affect the determination of purposeful availment). *Cf. Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (finding *monthly* sales of *thousands* of copies of defendant's magazine *in the forum state* sufficient to support personal jurisdiction). That plaintiff's son's order was placed over Beer Across America's Internet site on the World Wide Web is another important distinction between the instant case and prior Alabama decisions, which all involved some degree of personal interaction between the plaintiffs and the nonresident defendants or their agents, and warrants some additional consideration.

■ The fact that many companies have established virtual beachheads on the In-

---

7. Beer Across America does engage in national advertising, but such placements cannot be said to target any particular market simply because that advertising reaches a particular state. *See Seymour By and Through Seymour v. Bell Helmet Corp.,* 624 F.Supp. 146, 149 (M.D.Ala.1985) (finding that national advertising campaign could not establish continuous and systematic contacts with Alabama merely because it reached the state). The implications of Beer Across America's Internet site will be discussed later in this order.

8. Although the sale to plaintiff's son purported to enroll him into a "club" that would send additional, monthly shipments of specially selected lagers and ales, the terms of sale clearly reveal that any future commitment was purely illusory as plaintiff's son was free at any time to terminate his "club" membership without penalty. In reality, plaintiff purchased and received a single shipment of beer and had the non-binding option to make additional, future purchases.

ternet and the fact that the Internet is now accessible from almost any point on the globe have created complex, new considerations in counting minimum contacts for purposes of determining personal jurisdiction. Recently, the Fifth Circuit adopted the carefully considered opinion of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), for analyzing Internet contacts. *See Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir.1999). Under *Zippo*, as adopted in *Mink*, jurisdiction is proper when the "defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet. . . .'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F.Supp. at 1124.) *In personam* jurisdiction is improper, however, when the nonresident defendant has established a passive Internet site, which acts as little more than an electronic billboard for the posting of information. *See Mink*, 190 F.3d at 336 (citing *Zippo*, 952 F.Supp. at 1124). Between those two extremes lies a gray area "where a defendant has a website that allows a user to exchange information with a host computer"; there, the determination turns on the nature of the information transmitted and on the degree of interaction. *See Mink*, 190 F.3d at 336. Applying these principles to the present case, clearly Beer Across America's site does not even anticipate the regular exchange of information across the Internet, much less provide for such interaction. Rather, it is closer to an electronic version of a postal reply card; the limited degree of interactivity available on the defendants' website is certainly insufficient to satisfy the minimum contacts requirement of due process for this Court to exercise personal jurisdiction over these defendants.

Furthermore, considerations of "fair play and substantial justice" do not support personal jurisdiction over the nonresident defendants in this action. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As noted previously, apart from minimum contacts, courts also consider the burdens on the nonresident defendant of litigating in the forum; the interests of the forum state in the litigation; the interests of the plaintiff in substantial relief; the interests of the interstate judicial system in efficiency; and the joint interests of the states in encouraging essential social policies. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Court recognizes that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a [distant] State," but the difficulties of geography still impose a not insubstantial burden on a defendant seeking to mount an effective defense against a potentially substantial claim in a remote jurisdiction to which that party has no real ties. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Although Alabama has a legitimate interest in protecting its residents, it has no interest in effectively regulating out-of-state sales of alcohol. *See, e.g., Healy v. Beer Institute*, 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); *Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). Similarly, plaintiff claims no actual injuries but merely seeks to punish and deter defendants, yet the state of Illinois has criminal and administrative procedures in place to accomplish the same task. *See* 235 Ill. Comp.Stat. 5/6–16 (West 1999). Finally, judicial efficiency and the joint interests of the individual states in promoting substantive social goals both weigh in favor of allowing each state to use its existing procedures to combat the illegal sale of alcohol within its borders. Fairness and justice simply do not warrant an exercise of *in personam* jurisdiction in this case despite the lack of minimum contacts. *See Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (commenting that additional factors may bolster a finding of jurisdiction even in the absence of minimum contacts).

In conclusion, the Court finds that plaintiff has failed to make a prima facie case of personal jurisdiction over the defendants. The defendants lack minimum contacts with Alabama and considerations of fairness and substantial justice do not favor an assertion of personal jurisdiction by this Court. However, simply because this Court lacks jurisdiction does not mean that the defendants are completely immune from plaintiff's suit. The evidence offered both in support of and in opposition to Beer Across America's motion to dismiss leads the Court to find that personal jurisdiction would be proper in the Northern District of Illinois. Therefore, the defendants' motion to dismiss is DENIED but this action is hereby TRANSFERRED to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a), as well as 28 U.S.C. § 1404(a).[9] *See* 28 U.S.C. §§ 1404(a), 1406(a) (1994) (providing for a transfer of venue).

[9]. This transfer of venue is premised upon section 1404(a) as well as section 1406(a) because the interests of justice would not be served were this Court to retain venue under the improbable possibility that it has personal jurisdiction only to be reversed later by the Eleventh Circuit, causing whatever ultimate result this Court may have reached to be upset and necessitating both further litigation by the parties and the consumption of additional judicial resources.